UNITED STATE DISTRICT COURT
DISTRICT OF MAINE

---

**HENRY J. KOWALSKI**

**PLAINTIFF**

**v.**                                                            **CIVIL NO.**

**SETERUS, INC.**

**DEFENDANT**

---

**COMPLAINT**
**Request for Jury**

### I.    INTRODUCTION

This is an action for actual and statutory damages brought by Henry J. Kowalski, an individual consumer, against Seterus, Inc. for repeated attempts to collect on a mortgage loan debt after a Stipulated Judgment and Order of Sale entered waiving any deficiency and after the 90-day redemption period had expired.  The Plaintiff brings claims for Seterus' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (hereinafter ''FDCPA'') and the Maine Fair Debt Collection Practices Act, 32 M.R.S.A. §11001 *et seq*., (hereinafter ''ME FDCPA'') which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices and for violation of the Maine Consumer Credit Code, 9-A M.R.S. §9-403(G).

### II.    JURISDICATION AND VENUE

1. The jurisdiction of this Court is conferred by 28 U.S.C. §1331 and 28 U.S.C. §1367.

1

2. Venue is appropriate inasmuch as the property securing the mortgage loan is located in Oxford County, Maine at 66 Mountain View Lane, Bryant Pond, ME 04219.  Venue is also proper in this Court because the Defendant systematically and continuously transacts business in this county and State and the causes of action set forth in this Complaint, in part, arose in this county.

### III.   PARTIES

3. Plaintiff Henry J. Kowalski is a natural person residing in Bordentown, NJ.

4. Upon information and belief, Defendant Seterus, Inc., formerly known as Kyanite Financial Business Services, Inc. is a loan servicing entity incorporated in Delaware with a principal place of business in North Carolina.

5. At all relevant times, upon information and belief, Seterus was the servicer of the subject mortgage loan on the property located at 66 Mountain View Lane, Bryant Pond Maine 04219 beginning in approximately June 2015.

6. Upon information and belief, Seterus services the subject loan on behalf of the Federal National Mortgage Association (Fannie Mae).

7. Upon acquiring the servicing rights of Mr. Kowalski's mortgage loan, Seterus treated the loan as if it were in default.

8. Seterus engages in the business of attempting to collect debts in this state.

9. Seterus regularly engages in the enforcement of security interests securing debts.

10. Seterus collects debts using the mails and telephone, and Seterus regularly attempts to collect debts alleged to be due another.

11. Defendant Seterus is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6), and ME FDCPA 32 M.R.S.A. §11002(6) and 11003(7)(C).

## IV.   FACTS

12. Henry Kowalski is an 84-year-old retired military veteran.  He lives in New Jersey with his wife Lois.

13. On or about March 9, 2007, Mr. Kowalski executed and delivered to Aegis Wholesale Corporation a certain promissory note (the "Note") in the original principal amount of $408,750.00.

14. To secure the Note, on March 9, 2007, Mr. Kowalski and his two sons, John C. Weber and Brad J. Kowalski (collectively "the Kowalskis") executed and delivered to Mortgage Electronic Registration Systems, Inc., acting as nominee for Aegis Wholesale Corporation a mortgage (the "Mortgage") of certain real property located in Bryant Pond, Oxford County, Maine, which Mortgage was recorded in the Oxford County Registry of Deeds in Book 4103 at Page 268.

15. The Note and Mortgage are hereinafter collectively referred to as the "loan" or "mortgage loan."

16. Upon information and belief, the mortgage loan was assigned to OneWest Bank, FSB then Ocwen Loan Servicing LLC on July 30, 2015 and then Federal National Mortgage Association on September 16, 2015..

17. Mr. Kowalski originally bought the property for himself and his wife to move into after their retirement.  They had visited Maine during several summers and liked how quiet, safe, and relaxing it was to live in Maine.

18. Mr. Kowalski and his wife began living in the home for several months of each year.

19. Mr. Kowalski fell on difficult financial times and entered into a forbearance plan on the loan in or around 2009.

20. He believed he was still in the forbearance plan when OneWest Bank FSB initiated a foreclosure action on the property in October 2009.  The action was later dismissed.

21. A second foreclosure action was filed by OneWest Bank, FSB in June 2013 versus Mr. Kowalski and his sons Brad J. Kowalski and John C. Weber in the Maine District Court, South Paris, RE-13-44.

22. After failed attempts to resolve the foreclosure through the Foreclosure Diversion Program, Mr. Kowalski and his sons entered into a sStipulated Judgment of Foreclosure that would provide for a waiver of any deficiency on the loan.

23. A Stipulated Judgment of Foreclosure and Order of Sale ("Judgment") entered on May 26, 2015. A true and accurate copy of the Judgment is attached hereto as Exhibit 1.

24. The Judgment was recorded in the Oxford County Registry of Deeds on July 15, 2015 at Doc 7382, Bk 5323, Pg. 469.

25. The Judgment stated that, if the Defendants did not redeem the mortgage within 90 days,

> In consideration of Defendants stipulating to this Judgment, Plaintiff has waived any and all right to collect any deficiency balance remaining due to Plaintiff after the sale of the mortgaged real estate and application of the proceeds of sale to the balance set forth above.
> **According, it is ORDERED that Defendants are released from any and all personal liability on the Note.** (Emphasis added)

26. The Kowalskis vacated the property in August 2015.

27. The 90-day redemption period expired August 24, 2015.

28. The Kowalskis did not redeem the property.

29. Mr. Kowalski and his wife Lois believed everything was finally over and they would not have the mortgage debt and house hanging over their heads any longer.

30. Their plan was to sell their New Jersey home and buy a smaller, more affordable home in Maine.

31. They wanted to move to Maine to be near their sons and to enjoy a more relaxing pace of life.

32. In or around May, 2015, Seterus began delivering to Mr. Kowalski account statements alleging over $200,000 due on the loan.

33. In July, 2015 Seterus delivered to Mr. Kowalski an account statement stating he owed $220,733.28 on the mortgage loan, due August 1, 2015. A true and accurate copy of the statement is attached hereto as Exhibit 2 and incorporated herein by reference.

34. The account statements were sent to Mr. Kowalski's P.O. Box in Sumner Maine.

35. Mr. Kowalski's son Brad also used the same P.O. Box and had authority to open his father's mail.

36. Seterus sent another statement to Mr. Kowalski dated August 17, 2015 alleging $223,448.48 due by September 1, 2015. A true and accurate copy of the statement is attached hereto as Exhibit 3 and incorporated herein by reference.

37. Seterus sent another statement to Mr. Kowalski dated September 16, 2015 alleging $226,148.68 due by October 1, 2015. A true and accurate copy of the statement is attached hereto as Exhibit 4 and incorporated herein by reference.

38. Seterus sent another statement to Mr. Kowalski dated November 16, 2015 alleging $228,863.88 due by December 1, 2015. A true and accurate copy of the statement is attached hereto as Exhibit 5 and incorporated herein by reference.

39. Brad notified his father about the account statements each month.

40. On or around November 20, 2015, Seterus called Mr. Kowalski at his home in New Jersey in an attempt to collect on the mortgage loan debt.

41. Mr. Kowalski explained that he believed the debt had been taken care of in Court.

42. Mr. Kowalski explained he had an attorney but the Seterus representative claimed there was no attorney on record.

43. The Seterus representative explained that if Mr. Kowalski did not pay the over $200,000 he owed on the loan, Seterus would foreclose on his home.

44. Mr. Kowalski feared this meant that Seterus could take his New Jersey home.

45. Mr. Kowalski contacted his son Brad in severe distress over the potential loss of his New Jersey home and Seterus' continued attempts to collect on over $200,000, an astronomical sum for Mr. and Mrs. Kowalski who are retired and on a fixed income.

46. Brad attempted to contact Seterus to understand what was happening but Seterus refused to speak with him.

47. Due to the monthly account statements and call, Mr. Kowalski and his sons feared something may have gone wrong at Court and that the Judgment had not gone through.

48. Brad contacted their foreclosure attorney, Andrew Kull, and retained him again, this time to deal with Seterus' attempts to collect on the mortgage loan.

49. Attorney Kull delivered a cease and desist letter to Seterus on November 20, 2015 by facsimile and included a copy of the Judgment. A true and accurate copy of the facsimile is attached hereto as Exhibit 6 and incorporated herein by reference.

50. Seterus acknowledged receipt of the Facsimile (Exhibit 6) on November 20, 2015. A true and accurate copy of the Seterus acknowledgement letter is attached hereto as Exhibit 7 and incorporated herein by reference.

51. Mr. Kowalski was relieved and hoped this would stop Seterus from trying to collect on the mortgage loan and from foreclosing on his New Jersey home.

52. Seterus sent another account statement to Mr. Kowalski dated December 16, 2015 alleging $231,564.08 due by December 16, 2015. A true and accurate copy of the statement is attached hereto as Exhibit 8 and incorporated herein by reference.

53. Mr. Kowalski again feared that Seterus would not stop until the debt was paid, either by him or by taking his New Jersey home.

54. The New Jersey home has some equity that would allow Mr. Kowalski and his wife to move to Maine.

55. In a letter dated January 4, 2016 to attorney Kull, Seterus stated they would no longer be calling Mr. Kowalski or his sons or sending correspondence to them except for those "legally required." Seterus asserted that Mr. Kowalski and his sons "remain the owners of record for the collateral property …until the foreclosure is complete. As a result, we will continue to mail certain legal notices until the foreclosure action is completed." A copy of the letter is attached hereto as Exhibit 9 and incorporated by reference herein.

56. Mr. Kowalski and his sons believed this meant that Seterus would still send notices to try and collect the money.

57. Seterus sent another account statement directly to Mr. Kowalski dated January 18, 2016 alleging $234,264.28 due by January 18, 2016. A true and accurate copy of the statement is attached hereto as Exhibit 10 and incorporated herein by reference.

58. Seterus sent a statement dated January 22, 2016 to Mr. Kowalski providing a principal and escrow "reconciliation." A copy of the letter is attached hereto as Exhibit 11 and incorporated herein by reference.

59. In February 2016, Mr. Kowalski retained current counsel.

60. Current counsel delivered a demand letter alleging violations of the Maine Unfair Trade Practices Act 5 M.R.S.A. 205 et seq., and the Maine and Federal FDCPA to Seterus dated February 3, 2016.

61. Seterus received the letter on February 8, 2016.

62. Seterus did not reply to the letter.

63. Seterus sent another statement to Mr. Kowalski, c/o current counsel, dated February 16, 2016 alleging $236,964.48 due by February 16, 2016. A true and accurate copy of the statement is attached hereto as Exhibit 12 and incorporated herein by reference.

64. As a result of Seterus' continued attempts to collect on the mortgage loan from Mr. Kowalski, he became severely distressed. He and his wife Lois believed their New Jersey home was now in jeopardy of being lost to foreclosure, a home they planned to sell to move to Maine. Mr. Kowalski became afraid to answer the door for fear it was the sheriff telling him he had to leave. He and Lois would take turns going to the mailbox for fear there would be a notice regarding foreclosure on their home.

65. Mr. Kowalski and his wife had wanted to move to Maine after the Judgment entered. They have equity in their New Jersey home and would use that to buy a small home in Maine. They were relieved when the Judgment entered and started making plans to sell the house and move. They believed the mortgage loan was resolved and they could move forward.

66. When the notices started in July 2015 and Seterus called to collect on the loan in November 2015, Mr. Kowalski was petrified he would lose his New Jersey home and they would have nowhere to live.  All plans to sell the house and move were put on hold.

67. Mr. Kowalski became very agitated and distressed.  He has a heart condition and his heart races when he gets distressed.  The notices and call with Seterus caused his heart to race and his blood pressure to increase.

68. After the notices and call, Mr. Kowalski became very reserved and moody and stopped going out as much to eat or to do yard work.  He shut down and would sit inside very quietly.  He was frustrated, anxious and confused and could not understand why Seterus was continuing to try and collect the mortgage loan.

69. If not for the account statements and call, Mr. Kowalski hoped by now they would be living in Maine. He and Lois want to spend the time they have left in Maine, a peaceful, quiet area, but feel they cannot do anything until they know what is happening with their home and the mortgage loan.

## FIRST CLAIM FOR RELIEF
**Violation 15 USC §1692 et seq.: Fair Debt Collection Practices Act**

70. Plaintiff repeats and realleges and incorporates by reference all paragraphs above.

71. Defendant Seterus violated the FDCPA.  Defendant's violations include, but are not limited to, the following:

    a) The Defendant violated 15 USC §1692c(2) by communicating with Mr. Kowalski in connection with the collection of the mortgage debt when Seterus knew that Mr. Kowalski was represented by an attorney with respect to that debt and had knowledge of that attorney's name and address;

b) The Defendant violated 15 USC §1692d by engaging in conduct, the natural consequence of which was to harass, oppress or abuse Mr. Kowalski in connection with the collection of the mortgage debt by delivering notices and calling to seek payment of monies not owed by him due to the stipulated judgment releasing him from any and all personal liability on the Note;;

c) The Defendant violated 15 USC §1692e by using false, deceptive or misleading representations or means in connection with the collection of Mr. Kowalski's mortgage debt by delivering notices seeking payment of monies not owed by him due to the stipulated judgment releasing him from any and all personal liability on the Note;

d) The Defendant violated 15 USC §1692e(2)(A) by falsely representing the character, amount or legal status of the mortgage debt;

e) The Defendant violated 15 USC §1692f by using unfair or unconscionable means to collect or attempt to collect on the mortgage debt;

72. Defendant's acts as described above were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

73. Defendant's conduct constitutes a pattern and practice of violation of the FDCPA.

74. Defendant's conduct caused emotional distress to Mr. Kowalski as outlined above.

75. As a result of the above violations of the FDCPA, the Defendant is liable to the Plaintiff for declaratory judgment that defendant's conduct violated the FDCPA, and Plaintiff's actual damages, which include damages for emotional distress, statutory damages, costs and attorney's fees and for such other and further relief as may be just and proper.

### SECOND CLAIM FOR RELIEF
**Violation 32 M.R.S.A. §11001 et seq.: Maine Fair Debt Collection Practices Act**

76. Plaintiff repeats and realleges and incorporates by reference all paragraphs above.

77. Defendant Seterus violated the Maine FDCPA.  Defendant's violations of the Maine FDCPA but are not limited to, the following:

   a) The Defendant violated 32 M.R.S.A. §11012(1)(B) by communicating with Mr. Kowalski in connection with the collection of the mortgage debt when Seterus knew that the consumer is represented by an attorney with respect to that debt and had knowledge of that attorney's name and address;

   b) The Defendant violated 32 M.R.S.A. §11013(1) by engaging in conduct, the natural consequence of which was to harass, oppress or abuse Mr. Kowalski in connection with the collection of the mortgage debt by delivering notices and calling to seek payment of monies not owed due to the stipulated judgment releasing him from any and all personal liability on the Note;

   c) The Defendant violated 32 M.R.S.A. §11013(2) by using false, deceptive or misleading representations or means in connection with the collection of Mr. Kowalski's mortgage debt by delivering notices seeking payment of monies not owed due to the judgment releasing him from any and all personal liability on the Note;

   d) The Defendant violated 32 M.R.S.A. §11013(2)(B) by falsely representing the character, amount or legal status of the mortgage debt;

   e) The Defendant violated 32 M.R.S.A. §11013(3) by using unfair or unconscionable means to collect or attempt to collect on the mortgage debt.

78. Defendant's acts as described above were done intentionally with the purpose of coercing Plaintiffs to pay the alleged debt.

79. Defendant's acts caused Mr. Kowalski emotional distress as described above.

80. As a result of the above violations of the Maine FDCPA, the Defendant is liable to the Plaintiff for injunctive and declaratory relief and for actual damages, which includes damages for emotional distress, statutory damages, attorney's fees and costs and for such other and further relief as may be just and proper.

### THIRD CLAIM FOR RELIEF
### Illegal, Fraudulent or Unconscionable Conduct In Attempted Collection Of Debts In Violation of the Maine Consumer Credit Code 9-A M.R.S. §9-403(G)

81. Plaintiff repeats and realleges and incorporates by reference all paragraphs above.

82. Seterus claimed a right and attempted to enforce a right that it had relinquished pursuant to an agreed order entered by the Maine District Court in the matter of *OneWest Bank, FSB v. Henry J. Kowalski, Brad J. Kowalski and John C. Weber,* RE-13-44 (Me. Dist. Ct., South Paris, (May 27, 2015). The Court ordered the foreclosure judgment to be satisfied by the sale of the property and that Plaintiff "waived any and all right to collect any deficiency balance remaining due to Plaintiff after the sale of the mortgaged real estate and application of the proceeds of sale to the balance set forth above. According, it is ORDERED that Defendants are released from any and all personal liability on the Note." (Exhbit 1). Consequently the right to collect any balances owed on the mortgage loan has been barred by a final order of the court.

83. Seterus thereby violated the Maine Consumer Credit Code (MCCC), 9-A M.R.S. §9-403(G).

84. Such violations constitute a violation of the Maine Unfair Trade Practices Act pursuant to 9-A M.R.S. §9-408.

85. The Plaintiff is entitled to actual, including emotional distress, damages, statutory damages, their attorneys' fees and costs, and such other relief the Court does deem just, equitable and proper.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff demands trial by jury in this action.

Respectfully submitted this 11th day of March, 2016.

                                                       */s/ Andrea Bopp Stark, Esq.*
Andrea Bopp Stark, Esq., Bar No. 8764

**MOLLEUR LAW OFFICE**
419 Alfred St.
Biddeford, ME 04005
207-283-3777