THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MAINE

| | |
|---|---|
| HENRY KOWALSKI, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SETERUS, INC. )<br>)<br>Defendant. ) | CIVIL ACTION NO. 1:16-cv-00160-JAW |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH
RELIEF MAY BE GRANTED WITH INCORPORATED MEMORANDUM OF LAW**

Defendant Seterus, Inc. ("Seterus") moves, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiff Henry Kowalski's ("Plaintiff'") amended complaint for failure to state a claim upon which relief may be granted.[1] In support of its motion, Seterus states the following:

**INTRODUCTION**

Plaintiff alleges that eight account statements, a single phone call from his loan servicer (Seterus), and notices that he would be charged an insurance premium caused him emotional harm. But the account statements and phone call simply provided information about how Plaintiff could redeem his mortgage—an act expressly permitted under Maine and federal law and intended to benefit Plaintiff. And, the insurance letters were simply notices that Seterus intended to purchase and then canceled its lender placed hazard insurance. Yet Plaintiff alleges that these communications violated the Maine Fair Debt Collection Practices Act ("Maine FDCPA"), the federal Fair Debt Collection Practices Act ("FDCPA") and the Maine Unfair Trade Practices Act ("UTPA"). All Plaintiff's claims fail as a matter of law.

---

[1] Seterus moved to dismiss the original complaint filed by Plaintiff under Rule 12(b)(6). On the response date for his opposition, Plaintiff filed the amended complaint that contained additional allegations and exhibits, which required Seterus to file this motion.

First, Seterus complied with all applicable laws. Because no foreclosure sale had yet occurred on Plaintiff's property, Maine law expressly permitted Seterus to extend the time in which Plaintiff could redeem his loan and avoid a foreclosure sale. As a result of the permitted extension, federal law actually required Seterus to provide Plaintiff with periodic statements regarding Plaintiff's redemption balance. Accordingly, as a matter of law, the monthly statements cannot be considered an unfair means of enforcing his mortgage loan.

Second, and independently, Seterus is statutorily exempt from liability. The Consumer Financial Protection Bureau exempts loan servicers from liability under debt collection laws where the servicer, such as Seterus, sends periodic monthly statements as required by Regulation Z of the Truth in Lending Act ("TILA") directly to the mortgagor despite a cease communications request. Accordingly, Seterus cannot be liable for sending periodic redemption statements to Plaintiff notwithstanding Plaintiff's request that Seterus cease communicating directly with him.

Finally, Plaintiff's Maine Consumer Credit Code claim fails because Plaintiff has not alleged a violation of the statute. Even if such conduct was alleged, Plaintiff only alleges that Seterus caused him emotional harm. Because recovery under the Maine Consumer Credit Code derives from the UPTA and this Court and the Maine Supreme Judicial Court made clear that emotional damages are not recoverable under UTPA, this claim fails as a matter of law.

## FACTS

On March 9, 2007, Plaintiff executed a promissory note payable to Aegis Wholesale Corporation promising to pay $408,740.00. Compl. ¶ 13; Ex. A. *Note and Mortgage*. To secure repayment of the note, Plaintiff (along with his sons) executed a mortgage on the Property.

Compl. ¶ 14; Ex. A. *Note and Mortgage*.[2] Mortgage Electronic Registrations Systems Inc. ("MERS") was named nominee mortgagee in the mortgage. Id. Seterus began servicing Plaintiff's mortgage loan in June 2015. Compl. ¶ 5.

Plaintiff eventually defaulted on the mortgage loan. Compl. ¶¶ 19-20. After default, OneWest Bank, FSB ("OneWest"), the mortgagee at the time, brought a foreclosure action in the South Paris District Court. Compl. ¶ 21. After failing to resolve Plaintiff's default through mediation, Plaintiff (and his sons) entered into a Stipulated Judgment of Foreclosure and Order of Sale ("Stipulated Judgment") on May 26, 2015. Compl. ¶¶ 22-23. See Dkt. 1-1 p. 2. The Stipulated Judgment provided Plaintiff 90-days to redeem the loan, incorporated the Maine civil foreclosure statute, including its provision to allow the mortgagee to extend the redemption period, and relieved Plaintiff from any deficiency upon completion of the foreclosure auction. Id.

After judgment was entered, the mortgage was assigned from OneWest to Ocwen Loan Servicing LLC ("Ocwen") and then from Ocwen to Federal National Mortgage Association ("Fannie Mae"). See Compl. ¶ 16; see also Ex. B, *Motion to Substitute Plaintiff*.[3] As a result of these assignments, on November 12, 2015, OneWest filed a motion to substitute Fannie Mae as plaintiff in the foreclosure litigation. See Ex. B, *Motion to Substitute Plaintiff*. In addition, OneWest sought an extension of time from the allowance of the motion to conduct the

---

[2] Public documents recorded in the county registry of deeds are subject to judicial notice. In re Colonial Mort. Bankers Corp., 324 F.3d 12, 19 (1st Cir. 2003).

[3] This Court may take judicial notice of pleadings filed in the foreclosure action in the South Paris District Court. See Rand v. Bath Iron Works Corp., No. CIV. 99-227-P-C, 2000 WL 760730, at *2 (D. Me. Mar. 21, 2000); Boston Prop. Exch. Transfer Co. v. Iantosca, 686 F. Supp. 2d 138, 142 (D. Mass. 2010) aff'd, 720 F.3d 1 (1st Cir. 2013) (stating that courts may take judicial notice of "prior litigation documents").

foreclosure sale. Id.  On January 4, 2016, the district court allowed the motion and permitted Fannie Mae to "conduct the foreclosure sale in conformance with 14 M.R.S. § 6323." See Ex. C, *Court Order*.  In accordance with this order, Fannie Mae conducted a foreclosure auction on the subject property on March 29, 2016. See Ex. D, *Foreclosure Deed*.

Before completing the foreclosure sale in March 2016, Seterus sent Plaintiff redemption letters from July 2015 to March 2016.  See e.g. Dkt. 1-2 p. 1-4.  These redemption letters state an amount due. Id. They provide a date on which the amount due is required to be paid. Id.  In referencing the amount due, the letters refers to footnote "3." Id.  Footnote "3" explained that the amount sought "is the amount to bring the loan current and reinstate the loan as of the statement date."  Id.  In addition to the redemption letters, Seterus spoke directly with Plaintiff in November 2015 regarding his option to redeem the loan. See Compl. ¶ 40.

Finally, in March 2016 (before the foreclosure sale) Seterus sent Plaintiff notice of its intent to renew it lender placed hazard insurance.  See Dkt No. 9-15 p. 2.  On April 26, 2016, Seterus notified Plaintiff that it canceled the lender placed insurance policy in place on the Property.  See Dkt. 9-16 p. 4.

Based on the foregoing, Plaintiff alleges that he suffered emotional distress due to a fear that Seterus would foreclose on his other unrelated property in New Jersey where he allegedly resides.  See Compl. ¶¶ 53, 64-69.

## ARGUMENTS AND AUTHORITIES

The First Circuit uses "two steps" to evaluate the sufficiency of a complaint.  Schatz v. Rep. State L'ship Comm*., 669 F.3d 50, 55–56 (1st Cir. 2012).  "The first prong is to identify the factual allegation and to identify statements in the complaint that merely offer legal conclusions couched as facts or are threadbare or conclusory."  Schatz, 669 F.3d at 55 (citing Ocasio-

Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011)).  "A plaintiff is not entitled to proceed perforce by virtue of allegations that merely parrot the elements of the cause of action." Id.  Under the second prong, a court assesses the quality of the factual allegations and determines whether they "allow [ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Soto-Torres v. Fraticelli, 654 F.3d 153, 159 (1st Cir. 2011) (quotation marks and citation omitted).  If a court can make such inferences, "the claim has facial plausibility."  Ocasio-Hernández, 640 F.3d at 12.  In essence, "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief."  Soto-Torres, 654 F.3d at 159 (citing Sepúlveda-Villarini v. Dep't. of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010)).

## I. SETERUS' COMMUNICATIONS DID NOT VIOLATE THE FDCPA OR THE MAINE FDCPA BECAUSE THEY WERE SENT IN ACCORDANCE WITH 14 M.R.S. § 6323.

### A. Maine Law Allows Seterus to Extend Plaintiff's Redemption Period And Thereby Preserve Plaintiff's Title To The Property.

Seterus did not violate any debt collection laws.  Although a stipulated judgment of foreclosure had entered, Plaintiff retained title to the Property because the redemption period was extended pursuant to 14 M.R.S. § 6323.  To foreclose in Maine, the mortgagee must bring a civil action.  See 14 M.R.S. § 6321 ("After breach of condition in a mortgage of first priority, the mortgagee or any person claiming under the mortgagee may proceed for the purpose of foreclosure by a civil action against all parties in interest"); In re Collins, 474 B.R. 317, 320 (Bankr. D. Me. 2012) ("Maine property law requires mortgagees to foreclose on their collateral through a civil action."). Generally, "[o]nce a foreclosure judgment has been issued by the court, the mortgagor has 90 days to redeem the property, unless an appeal is taken."  In re Collins, 474 B.R. at 320 (citing 14 M.R.S. § 6322)).  After the redemption period expires, a mortgagor's

interest in the property is "extinguished and title to the property automatically vested in the mortgagee." Duprey v. Eagle Lake Water & Sewer Dist., 615 A.2d 600, 604 (Me. 1992); see also United States v. Harriman, 851 F. Supp. 2d 190, 193 (D. Me. 2010).

While the redemption period is traditionally 90-days, Maine law permits a mortgagee to extend unilaterally the redemption period. 14 M.R.S. § 6322; 14 M.R.S. § 6323. The statute provides: "The mortgagee, in its sole discretion, may allow the mortgagor to redeem or reinstate the loan after the expiration of the period of redemption but before the public sale." 14 M.R.S. § 6323. Accord St. Hilaire v. Berta, 588 A.2d 309, 310 (Me. 1991) (explaining that "refusing to allow the [the mortgagor] to redeem the[] mortgage beyond the statutory time for redemption" complied with the Maine foreclosure law.).

Here, every complained-of communication (save the April 26, 2016 insurance letter) occurred during the extended redemption period. Rather than demanding the total accelerated loan amount of $612,786.47,[4] each of the seven account statements set forth an amount to redeem the mortgage and reinstate the loan in order to avoid a foreclosure sale (e.g. the August statement set forth a redemption amount of $220,733.28). Each of the eight letters sent by Seterus to Plaintiff is identical (except for the total redemption payment). See e.g. Dkt. 1-2 p. 1-4. They state an amount due. Id. They provide a date on which the amount due is required to be paid. Id. In referencing the amount due, the letters specifically make clear that the "amount due" is to bring the loan current, rather than the total accelerated amount of the loan. Id. Footnote "3" explains that the amount sought "is the amount to bring the loan current and reinstate the loan as of the statement date." Id. In other words, rather than being the "unfair" letters alleged, the letters provided notice to Plaintiff that Seterus was extending his redemption period and that he

---

[4]   See Compl. Ex. 1, page 1 of Stipulated Judgment setting forth total amount of accelerated loan.

6

could reinstate the loan and retain title to the Property if he were to make the reinstatement payment. Seterus, as a servicer acting on behalf of the mortgagee, was well within its right to take this action. See St. Hilaire, 588 A.2d at 310.[5]

Furthermore, the Stipulated Judgment contemplates an extension of the redemption period and conditions the release of the debt upon completion of the foreclosure sale. See Dkt.1-1 p. 1-3. The Stipulated Judgment incorporates "14 M.R.S. §6321 et seq." thereby incorporating 14 M.R.S. § 6323 and its unilateral redemption extension provision. In addition, Plaintiff's debt obligation was fully extinguished only upon the mortgagee's completion of the sale. Id. ("Plaintiff has waived any and all right to collect any deficiency balance remaining due to Plaintiff *after the sale of the mortgaged real estate*…") (emphasis added). Taken together, the Maine foreclosure regime and the Stipulated Judgment allowed Seterus to extend the redemption period. Doing so cannot violate state and federal debt collection statutes.

### B. Because Maine Law Allows Seterus To Extend The Redemption Period, Sending Redemption Notices Does Not Violate The FDCPA Or Maine Law.[6]

"In order to prevail on an FDCPA claim, a plaintiff must prove that (1) he was the object of collection activity arising from consumer debt, (2) the defendant is a debt collector within the

---

[5] Likewise, Seterus' alleged November 20, 2015 phone call to Plaintiff is unactionable as Plaintiff alleges that, during the call, the Seterus representative stated that Plaintiff was required to pay "over $200,000.00" otherwise Plaintiff would lose title to the Property. Compl. ¶ 43. This general amount coincides with the reinstatement amount stated in the November redemption letter. See Dkt. 1-5 p. 1.

[6] Because the "M[aine] FDCPA's … language … tracks that of the federal statute almost exactly" Seterus' analysis under the FDCPA applies equally to Plaintiff's Maine FDCPA claim. Shapiro v. Haenn, 222 F. Supp. 2d 29, 44 (D. Me. 2002); see also Hamilton v. Fed. Home Loan Mortgage Corp., No. 2:13-CV-00414-JAW, 2014 WL 4594733, at *18 (D. Me. Sept. 15, 2014) (interpretation state and federal statutes together); In re Martel, 539 B.R. 192, 198 (Bankr. D. Me. 2015) ("The Maine FDCPA mirrors the federal Act, and therefore, my analysis applies equally to each.")

meaning of the statute, and (3) the defendant engaged in a prohibited act or omission under the FDCPA." Poulin v. The Thomas Agency, 760 F. Supp. 2d 151, 158 (D. Me. 2011). To determine whether the reinstatement letters violated the FDCPA, the First Circuit employs the "hypothetical unsophisticated consumer" test. Pollard v. Law Office of Mandy L. Spaulding, 766 F.3d 98, 103 (1st Cir. 2014). The hypothetical unsophisticated consumer is not a "dimwit," Wahl v. Midland Credit Mgmt., Inc., 556 F.3d 643, 645 (7th Cir. 2009), or the "very last rung on the sophistication ladder." Pollard, 766 F.3d at 109 n.4. Instead, the hypothetical unsophisticated consumer is "capable of reading and interpreting a document that is written in plain English" and is "capable of understanding a document that contains certain types of information, some of which are legal concepts that are required to be included as a matter of law." Sullivan v. Credit Control Servs., Inc., 745 F. Supp. 2d 2, 7-8 (D. Mass. 2010); Fed. Home Loan Mortg. Corp. v. Lamar, 503 F.3d 504, 510 (6th Cir. 2007) (least sophisticated consumer is presumed to have read document "in its entirety, carefully and with some elementary level of understanding."); Price v. Seterus, Inc., No. 15 C 7541, 2016 WL 1392331, at *3 (N.D. Ill. Apr. 8, 2016) ("The unsophisticated consumer … has rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences."). Under this standard, Plaintiff fails to state a claim under both the FDCPA and the Maine FDCPA.

The FDCPA prohibits a debt collector from engaging in "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. "Courts . . . dismiss[] claims filed pursuant to § 1692d as a matter of law if the facts alleged do not have the natural consequence of harassing or abusing a debtor." Harvey v. Great Seneca Fin. Corp., 453 F.3d 324, 330 (6th Cir. 2006) (citing Jeter v. Credit Bureau, 760 F.2d 1168, 1179 (11th Cir. 1985)). Exercising a legal right to extend the

redemption period does not have the natural consequence to harass. Harvey, 453 F.3d at 330 ("Any attempt to collect a defaulted debt will be unwanted by a debtor, but [lawfully] employing the court system … cannot be said to be an abusive tactic under the FDCPA."); see also Watkins v. Peterson Enters., 57 F. Supp. 2d 1102, 1109 (E.D.Wa. 1999) (employing garnishment procedures that overstated debt was "far cry from" the practices prohibited by 15 U.S.C. § 1692d).

Plaintiff's claims under 15 U.S.C. § 1692d in the present dispute fail because the "natural consequence" of extending the period in which a borrower can redeem the loan is not "to harass, oppress, or abuse" the borrower. Instead, the natural consequence is to temporarily benefit the Plaintiff by providing an opportunity to preserve his equity of redemption so that he can retain the Property and avoid a foreclosure sale. Accordingly, as there are no facts alleged that have the natural consequence of harassing or abusing a debtor, Plaintiff fails to state a claim under 15 U.S.C. § 1692d.

In addition, Plaintiff alleges that Seterus mischaracterized the debt and thereby used false, deceptive, and unconscionable means to collect on the debt in violation of the FDCPA. Plaintiff's argument misses the mark. Seterus did not mischaracterize Plaintiff's debt. Plaintiff appears to allege that the Stipulated Judgment in the foreclosure action "discharged" their debt. However, Plaintiff does not (and cannot) allege that Seterus sought monthly payments under the loan. Instead, it is undisputed that Seterus provided Plaintiff with notice that he had the option to redeem his loan, retain his property, and avoid foreclosure. "The FDCPA does not prohibit all debt collection practices. Instead, it simply prohibits false, misleading, deceptive, unfair, or unconscionable debt collection practices." In re Martel, 539 B.R. 192, 196 (Bankr. D. Me. 2015) (quoting In re Gatewood, 533 B.R. 905, 910 (B.A.P. 8th Cir. 2015)). Lawful and accurate

9

conduct, like Seterus' here, cannot violate the FDCPA. Id. ("Filing in a bankruptcy case an accurate proof of claim containing all the required information, including the timing of the debt, standing alone, is not a prohibited debt collection practice . . . nor is such a claim harassing or abusive or unfair within the meaning of §§ 1692d or f of the FDCPA.").

Lastly, and independently, the account statements cannot violate the FDCPA where federal law requires Seterus to send them to Plaintiff so long as Plaintiff retains title to the Property. Under Regulation Z of TILA, a mortgagee is required to send periodic statements for "closed-end consumer credit transaction secured by a dwelling" such as a mortgage loan. 12 C.F.R. § 1026.41(a)(1). These statements are required regardless of whether the loan is in default, Matmanivong v. Nat'l Creditors Connection, Inc., 79 F. Supp. 3d 864, 873 (N.D. Ill. 2015), or whether the mortgagee fully accelerated the loan amount. Amendments to the 2013 Mortgage Rules under the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z), 79 FR 74176, 74214 (proposed Dec. 15, 2014) (discussing requirements for statements on accelerated loans).

Because Maine law allows Seterus' to extend Plaintiff's redemption period up to the day of the foreclosure sale pursuant to 14 M.R.S. § 6323, Plaintiff maintained the equity of redemption upon the loan. Under these circumstances, Seterus was required to send periodic statements under Regulation Z because the mortgage loan was not fully extinguished and the mortgage still secured the Property. The Consumer Financial Protection Bureau ("CFPB") recently proposed regulations that approve of such letters to mortgagors:

> Section 1026.41(d)(1)(iii) provides that the periodic statement required by § 1026.41(d) must include the amount due, shown more prominently than other disclosures on the page. Proposed comment 41(d)(1)-1 provides that if the balance of a mortgage loan has been accelerated but the servicer will accept a lesser amount to reinstate the loan, the amount due disclosed on the periodic statement under § 1026.41(d)(1) should identify only the lesser amount that will be accepted

10

to reinstate the loan, not the entire accelerated balance. The Bureau is aware that after accelerating a mortgage loan, a servicer may be willing to accept a lesser amount to reinstate the loan, sometimes because doing so may be required by State law. The Bureau believes that it would be counterproductive in these circumstances for the borrower to receive a periodic statement disclosing the amount due as the full accelerated balance, which may be quite large. Because the borrower is much more likely to be able to pay a reinstatement amount than the full accelerated balance, the Bureau believes that receiving a periodic statement indicating that the amount due is the reinstatement amount would make the borrower more likely to actually pay the reinstatement amount, thereby possibly preventing foreclosure. The Bureau also believes it may confuse borrowers to receive a periodic statement indicating that the amount due is the full accelerated balanced when, in fact, the borrower is informed elsewhere that the borrower may pay only the reinstatement amount. Furthermore, the borrower may be deterred from reading other disclosures or documents if the borrower sees the full accelerated balance as the amount due, so the borrower may not actually become aware that reinstatement is possible, possibly leading to unnecessary foreclosure.

Amendments to the 2013 Mortgage Rules under the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z), 79 FR 74176, 74214 (proposed Dec. 15, 2014) (to be codified at 12 C.F.R. 1026). In other words, where Seterus was required by law to send periodic statements and the periodic statements clearly indicated the correct[7] redemption amount, the mere act of sending redemption letters to Plaintiff cannot violate the FDCPA.[8]

---

[7]   Plaintiff does not allege that the amount sought in the redemption letters was incorrect or in any way misleading.

[8]   Furthermore, Plaintiff's claim that he understood Seterus' communication with him to mean that Seterus would foreclose on his New Jersey home does not pass the hypothetical unsophisticated consumer test. Under this standard, "[a] debt collector will not be held liable based on an individual consumer's chimerical or farfetched reading of a collection letter." Pollard, 766 F.3d at 104. Plaintiff alleges that in response to the redemption letters, he believed that Seterus was threatening to foreclose on his New Jersey home. Compl. ¶ 53. However, this reading of the letters is too "farfetched." The redemption letters do not contain any reference to a New Jersey property. Instead, they were delivered in Maine in the town post office where the Property is located. Indeed, Plaintiff does not allege that Seterus was connected in any way to the New Jersey property. Therefore, to construe these letters as threatening foreclosure on his New Jersey home is not reasonable. Oberther v. Midland Credit Mgmt., Inc., 45 F. Supp. 3d 125, 131 (D. Mass. 2014) ("The court, however, cannot conclude that a debt collector can be held

**C.  Sending Redemption Letters To Plaintiff Does Not Violate The FDCPA.**

Generally, the FDCPA "prohibits direct communications with a debtor if the debt collector knows the debtor is represented by an attorney." In re Webster, No. 09-42027, 2009 WL 2634576, at *3 (Bankr. D. Mass. Aug. 21, 2009) (citing 15 U .S.C. § 1692c(a)). The CFPB, however, exempts from the FDCPA's scope communications sent pursuant to 12 C.F.R. § 1026.41 even if the borrower has sent a cease communication correspondence to the debt collector. See Matmanivong, 79 F. Supp. 3d at 873 (citing CFPB Bulletin 2013-12, p. 7-8 (Oct. 15, 2013)). Specifically, the CFPB issued an "advisory opinion interpreting the FDCPA 'cease communication' requirement in relation to the 2013 Mortgage Servicing Final Rules." CFPB Bulletin 2013-12, at 6. The CFPB determined that "a servicer that is considered a debt collector under the FDCPA with respect to a borrower that provides disclosures to and communicates with the borrower pursuant to the provisions listed above, notwithstanding a 'cease communication' instruction sent by the borrower, is not liable under the FDCPA." In reaching this conclusion, the CFPB explained:

> These disclosures are specifically mandated by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank Act), 23 which makes no mention of their potential cessation under the FDCPA and presents a more recent and specific statement of legislative intent regarding these disclosures than does the FDCPA. Moreover, the CFPB believes that these notices provide useful information to consumers regardless of their collections status.

Id. at 7.

Here, Seterus' acts of sending redemption letters directly to Plaintiff under 12 C.F.R. § 1026.41 are exempt from liability under the FDCPA. Matmanivong, 79 F. Supp. 3d at 873; CFPB Bulletin 2013-12, at 6 ("[N]o liability arises under the FDCPA for an act done or omitted

---

liable under the FDCPA based on a consumer's incomplete or incorrect reading of a debt collection letter.").

in good faith in conformity with an advisory opinion of the CFPB while that advisory opinion is in effect."). Accordingly, Seterus cannot violate the FDCPA by communicating directly with Plaintiff despite its knowledge of Plaintiff's attorney representation. Thus, Plaintiff's claim under 15 U.S.C. § 1692c fails as a matter of law.

## II. SETERUS' INSURANCE LETTERS WERE NOT MADE IN CONNECTION WITH AN ATTEMPT TO COLLECT A DEBT.

Seterus' two insurance letters do not violate the FDCPA because neither attempted to collect a debt. "The FDCPA does not apply to every communication between a debt collector and a debtor." Gburek v. Litton Loan Servicing LP, 614 F.3d 380, 384-85 (7th Cir. 2010).[9] Rather, "the FDCPA applies only to communications that are intended to collect a payment." Penn v. Cumberland, 883 F. Supp. 2d 581, 587 (E.D. Va. 2012); see Krechner v. Nationstar Mortgage LLC, No. CV 15-5054, 2015 WL 9260055, at *5 (E.D. Pa. Dec. 18, 2015) ("The letter is a legally mandated notification. The letter lacks any offer or alternative payment method, nor does it include the amount owed. If this letter qualifies as a communication in connection with the collection of a debt, it is hard to imagine a communication from a debt collector to a debtor that would not fall within the scope of the FDCPA.").

First, the March 17, 2016 letter did not attempt to collect a debt. Seterus sent that letter to Plaintiff's attorney during Plaintiff's extended redemption period and pursuant to 12 C.F.R. § 1024.37(e), which requires a loan servicer to provide notice to the mortgagor that it intends to

---

[9] See also Grden v. Leikin Ingber & Winters PC, 643 F.3d 169, 173 (6th Cir. 2011); O'Connell v. Bayview Loan Servicing, LLC, No. 15-CV-1342, 2016 WL 1069079, at *1 (E.D. Wis. Mar. 17, 2016) ("[N]ot every communication from a debt collector to a consumer is a communication with a consumer in connection with the collection of any debt.") (citation omitted); Beeks v. ALS Lien Servs., No. CV 12-2411 FMO PJWX, 2014 WL 7785745, at *18 (C.D. Cal. Feb. 18, 2014) ("[T]here are "some limits on the reach of the FDCPA and the statute does not apply to every communication between a debt collector and a debtor.")(quotation marks and citation omitted).

13

renew the lender placed insurance policy insuring the property. The letter notified Plaintiff that the hazard insurance policy purchased by Seterus was expiring. Doc. 9-15 p. 2. It stated that Seterus intended to renew this policy, provided the costs of the renewed policy, and stated that coverage may not be as extensive as privately purchased insurance. Id. Enclosed with the letter was an "Insurance Questions" pamphlet. Id. at p.4. This document provided more detail about the expiration of the previous policy, stated that the account would be charged the policy premium if Plaintiff did not buy private insurance, and identified the general scope of coverage. Id. The letter did not demand a payment for a debt owed. Id.

This letter does not even reference a debt as defined by the FDCPA. Under the FDCPA, a debt is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction" 15 U.S.C. § 1692a. In other words, a debt is an obligation that is owed, not something that may be charged in the future. See O'Connor v. Nantucket Bank, 992 F. Supp. 2d 24, 31 (D. Mass. 2014). Because Seterus had not charged Plaintiff the insurance premium identified in the March 17, 2016 letter, the letter was not sent in connection with a debt and therefore did not violated the FDCPA. Udell v. Kansas Counselors, Inc., 313 F.Supp.2d 1135, 1140–41 (D.Kan.2004) ("The plain language of the [FDCPA] reveals that it does not prohibit communications regarding future debts. The statute specifically refers to debt that the consumer has refused to pay. In order for a consumer to *refuse* to pay a debt, he or she must of course have been asked to pay the debt.") (emphasis in original).

Courts have rejected the same claim Plaintiff brings here. See Preuher v. Seterus, LLC, No. 14 C 6140, 2014 WL 7005095, at *2 (N.D. Ill. Dec. 11, 2014). In Preuher, for example, the court concluded that a letter informing a borrower of an intent to purchase hazard insurance "was not made in connection with the collection of a debt" where the letter did not demand payment,

14

referenced that the "mortgage agreement required the property securing the loan to be insured," and informed the borrower that the loan servicer would purchase insurance if he plaintiff failed to. Id. at *2. Finally, the court determined that where the insurance letter was sent "to comply with 12 C.F.R. § 1024.37(e) … [it] bolsters the conclusion that [the letter] was sent for a purpose other than debt collection." Id.; see also Krechner, 2015 WL 9260055, at *5 (E.D. Pa. Dec. 18, 2015) ("[L]egally mandated notification" not sent for purposes of collecting debt). The March 17, 2016 letter has all the characteristics deemed proper by the Prueher court and was sent to comply with 12 C.F.R. § 1024.37(e). That letter, therefore, does not violate the FDCPA.

Second, the April 26, 2016 letter did not attempt to collect a debt. This letter informed the Plaintiff that Seterus' insurance policy for the May 1, 2016 to April 30, 2016 term expired on April 22, 2016. While the letter stated that an amount was charged to Plaintiff's account, like the March 17, 2016, it does not demand payment or threaten any action to compel Plaintiff to make payment. In other words, the communication was a proper communication between Seterus and Plaintiff that does not violate the FDCPA. In re Martel, 539 B.R. at 196 ("The FDCPA does not prohibit all debt collection practices. Instead, it simply prohibits false, misleading, deceptive, unfair, or unconscionable debt collection practices.").

The FDCPA disclaimer at the bottom of the insurance letters is legally irrelevant. Several courts have so found as a matter of law. See Gburek, 614 F.3d at 386 n.3 (disclaimer "does not automatically trigger the protections of the FDCPA, just as the absence of such language does not have dispositive significance."); Maynard v. Cannon, 401 F. App'x 389, 395 (10th Cir. 2010) ("[T]he inclusion of the FDCPA notice is legally irrelevant.").[10] This is because

---

[10] Garrett v. BNC Mortgage, Inc., 929 F. Supp. 2d 1120, 1127 (D. Colo. 2013) ("[T]he fact that an entity identifies itself as a debt collector, or tells a consumer that it is attempting to collect a debt, is not sufficient on its own to bring that entity within the purview of the

"the notice cannot expand the scope of the FDCPA, causing it to apply to things to which it otherwise would not apply." Rosado v. Taylor, 324 F. Supp. 2d 917, 925 n.4 (N.D. Ind. 2004). "Moreover, if the use of the statutorily required disclaimer is sufficient to establish an FDCPA claim, debt collectors will be placed in a conundrum, exposed to liability for both including the disclaimer and for omitting it." Boosahda v. Providence Dane LLC, 462 F. App'x 331, 334 (4th Cir. 2012).

### III. PLAINTIFF'S CONSUMER CREDIT CODE CLAIM FAILS TO STATE A CLAIM AS A MATTER OF LAW.

Plaintiff's Maine Consumer Credit Code ("MCCC"), 9-A M.R.S. §9-403(G), claim fails because Seterus has not violated the MCCC and Plaintiff has not alleged loss of money or property. Specifically, Plaintiff alleges that Seterus violated the MCCC by attempting to enforce a debt "that has been barred by law or a final order of the Supreme Judicial Court or a court of the United States." 9-A M.R.S. §9-403(G). While a violation of this provision is a *per se* violation of the UTPA, 9-A M.R.S. §9-408, Maine law permits Seterus to extend the redemption period to the benefit of the Plaintiff. 14 M.R.S. § 6323. Sending redemption letters during the extended redemption period, therefore, cannot violate 9-A M.R.S. § 9-403(G). Because Plaintiff's Maine Consumer Credit Code claim fails as a matter of law, his derivative UTPA claim fails as a matter of law.

Furthermore, to plead a violation of the UTPA, Plaintiff must allege "loss of money or property." 5 M.R.S. § 213. "Maine's UTPA … requires that a plaintiff suffer 'loss of money or property' before bringing a private action to recover." McKinnon v. Honeywell Int'l, Inc., 977

---

FDCPA."); Soriano v. Wells Fargo Bank, N.A., No. CIV. 11-00044 SOM, 2012 WL 1536065, at *10 (D. Haw. Apr. 30, 2012) ("Wells Fargo Defendants did not make themselves subject to the FDCPA simply by acknowledging the FDCPA's requirements just in case those provisions applied to them. Such a statement does not render the FDCPA applicable.").

A.2d 420, 427 (Me. 2009) (citing 5 M.R.S. § 213(1)). This injury must be "substantial." Id. "Loss of money or property" does not include emotional damages or attorney's fees incurred in responding to the alleged unfair act. See In re Hannaford Bros. Co. Customer Data Sec. Breach Litig., 660 F. Supp. 2d 94, 102 (D. Me. 2009) ("[T[he plain language of Section 213 rules out recovery of "damages for personal injury, mental distress or loss of time."); Bartner v. Carter, 405 A.2d 194, 202-03 (Me. 1979) ("First, the 'loss' for which an action for restitution is permitted by section 213 is a loss 'of money or property.' On its face, without the benefit of a strained interpretation, that language appears to rule out recovery, under the statute, of several kinds of non-restitutionary damages, such as damages for personal injury, mental distress or loss of time."); Fogg v. Ocwen Loan Serv., LLC, No. 2:14-CV-454-GZS, 2015 WL 1565229, at *4 (D. Me. Apr. 8, 2015) ("[T]his court has previously rejected an argument that the expense of retaining a lawyer to prevent or dispute allegedly unfair trade practices constitutes a loss of money or property for purposes of the UTPA."); Poulin v. Thomas Agency, 746 F.Supp.2d 200, 205–06 (D.Me. 2010) (under UTPA the cost of an attorney is an "expense[] that may be recoverable as attorneys fees—not actual damages").

Plaintiff does not allege that he suffered any loss of money or property in the complaint. Instead, he focuses his damages on the alleged emotional harm he suffered due to Seterus' conduct. Compl. ¶¶ 64-69. The UTPA does not permit this type of recovery. Bartner, 405 A.2d at 202-03. Plaintiff's UTPA claim therefore fails as a matter of law.

## CONCLUSION

For the reasons stated herein, this Court should grant Seterus' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, dismiss the complaint with prejudice, and

grant Seterus any further or different relief this Court deems equitable and just under the circumstances.

                                                             Respectfully submitted,

                                                             SETERUS, INC.,

                                                            By its attorneys,

                                                           */s/ Morgan T. Nickerson*
                                                           Morgan T. Nickerson (Maine Bar # 5525)
                                                           morgan.nickerson@klgates.com
                                                           **K&L GATES LLP**
                                                           State Street Financial Center
                                                           One Lincoln Street
                                                           Boston, MA 02111
                                                           (617) 261-3100
                                                           (617) 951-3175 (fax)

Dated: May 27, 2016

## CERTIFICATE OF SERVICE

      I, Morgan T. Nickerson, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: May 27, 2016                                                  */s/ Morgan T. Nickerson*